[Cite as *Brown v. New Miami*, 2020-Ohio-4873.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

DOREEN BARROW, et al.,                       :

     Appellees and Cross-Appellants,    :     CASE NOS.  CA2019-07-112
                                     CA2019-08-136
                                     :

     - vs -                            :     O P I N I O N
                                     :     10/13/2020

VILLAGE OF NEW MIAMI,                        :

     Appellant and Cross-Appellee.      :

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2013-07-2047

Engel & Martin, Joshua Adam Engel, 4660 Duke Drive, Suite 101, Mason, Ohio, 45040 and Rittgers & Rittgers, Charles H. Rittgers, 12 East Warren Street, Lebanon, Ohio 45036 and Michael K. Allen & Assoc., LLC, Michael K. Allen, 810 Sycamore Street, Floor 5, Cincinnati, Ohio 45202 and Markovits, Stock & DeMarco, LLC, Paul M. De Marco, 3825 Edwards Road, Suite 650, Cincinnati, Ohio 45209, for appellees and cross-appellants

Rendigs, Fry, Kiely & Dennis, LLP, James J. Englert, Felix J. Gora, 600 Vine Street, Suite 2650, Cincinnati, Ohio 45202, for appellant and cross-appellee

**RINGLAND, J.**

{¶1}   Appellant/Cross-appellee, the village of New Miami ("New Miami") appeals a decision of the Butler County Court of Common Pleas granting summary judgment in an action instituted by appellees/cross-appellants, Doreen Barrow and other similarly situated

individuals ("Plaintiffs"), challenging the constitutionality of a municipal ordinance. Plaintiffs have also filed a cross-appeal challenging the distribution of their award. For the reasons detailed below, we reverse the summary judgment granted to Plaintiffs and enter judgment on behalf of New Miami.

{¶2} New Miami operated a civil enforcement program to deter motorists from exceeding the speed limit at several village street intersections. The Automated Speed Enforcement Program ("ASEP") was instituted in July 2012 with the adoption of Ordinance 1917.

{¶3} The enforcement apparatus included a camera, vehicle sensor, and flash that could measure the speed of the vehicle and take a photograph of the infraction. Optotraffic, L.L.C. is a third-party company that provided the equipment and shared revenue with New Miami. If a vehicle exceeded the posted speed limit, a camera would photograph the license plate and the registered owner of the vehicle would receive a notice of liability in the mail. As relevant here, the speed limit was 35 m.p.h. The system in New Miami was set to record violations for vehicles travelling 46 m.p.h. or higher.

{¶4} Pursuant to the notice of liability, motorists could pay the penalty and waive the right to a hearing. Alternatively, motorists could request a hearing within 20 days from the date of the violation. The hearing was conducted by a hearing officer appointed by the mayor of New Miami. As outlined in the notice, motorists could proffer four affirmative defenses at the hearing: the vehicle was stolen, someone else was driving the vehicle, the vehicle was loaned to someone, or the license plate was not clearly discernable in the photograph.

{¶5} In order to avail themselves of the defense that someone else was driving the vehicle, the owner was required to provide the name and address of the person who had

custody or control of the motor vehicle at the time of the violation. Likewise, if the owner wished to defend on the basis that the vehicle or license plates had been stolen, the owner was required to submit proof that a police report about the stolen vehicle or license plates had been filed prior to the violation or within 48 hours after the violation occurred.

{¶6} Motorists who neglected to pay the penalty were subject to a late fee and referred to a collection agency, and the judgment against them was reported to credit reporting agencies.

{¶7} Plaintiffs are all motorists who were sent notices of liability. Some of the Plaintiffs paid the penalty and some did not. In 2013, Plaintiffs collectively filed suit against New Miami challenging ASEP and seeking class action certification. Count 1 sought a declaration that ASEP improperly divested the municipal court of jurisdiction over traffic violations in contravention of the Ohio Constitution. Count 2 sought a declaration that ASEP violated Plaintiffs' due process rights. Count 3 prayed for injunctive relief prohibiting continued enforcement of ASEP. Finally, Count 4 sought equitable restitution of any penalties, fees, or charges ("penalties") paid by Plaintiffs pursuant to ASEP, on the ground that retention of the penalties would unjustly enrich New Miami.

{¶8} In March 2014, the trial court granted partial summary judgment to Plaintiffs on Counts 1, 2, and 3 and denied New Miami's motion for summary judgment. The trial court found that ASEP unlawfully divested the municipal court of jurisdiction and violated the Ohio Constitution's guarantee of "due course of law." The trial court granted an injunction against continued enforcement of ASEP. Subsequently, Plaintiffs moved for summary judgment regarding their unjust enrichment/restitution claim. The trial court certified a class comprised of all persons who had received notices of liability under ASEP.

{¶9} New Miami appealed the class action certification decision. On December

30, 2014, we reversed and remanded for the trial court to clarify its Civ.R. 23 findings in support of certification. *Barrow v. New Miami*, 12th Dist. Butler No. CA2014-04-092, 2014-Ohio-5743 ("*Barrow I*"). On remand, the trial court articulated its rationale, made the requisite findings, and certified the class. New Miami once again appealed. On February 1, 2016, we affirmed the trial court's class certification. *Barrow v. New Miami*, 12th Dist. Butler, No. CA2015-03-043, 2016-Ohio-340 ("*Barrow II*").

{¶10} Subsequently, the parties renewed their motions for summary judgment regarding Plaintiffs' unjust enrichment/restitution claim in Count 4 with New Miami arguing it was immune from liability pursuant to the political subdivision immunity of R.C. Chapter 2744. In another interlocutory appeal, this court found that Plaintiffs' unjust enrichment/restitution claim is an equitable claim of restitution and is therefore not barred by sovereign immunity. *Barrow v. New Miami*, 12th Dist. Butler No. CA2017-03-031, 2018-Ohio-217, ¶ 51 ("*Barrow III*"). In so doing, we specifically noted that we were making no ruling on the amount of New Miami's liability, noting that the sole issue before us was whether the trial court erred in rendering summary judgment against New Miami upon its claim of immunity pursuant to R.C. Chapter 2744. *Id.* at ¶ 47, fn 3.

{¶11} On July 10, 2019, the trial court entered its final appealable order granting summary judgment. Following the release of a supreme court decision during the pendency of this case, the trial court altered its final decision and granted summary judgment in favor of New Miami on Count 1 and found that the ordinance did not unlawfully usurp the jurisdiction of the municipal courts over traffic violations. However, the trial court granted summary judgment in favor of Plaintiffs on Counts 2, 3, and 4, concluding that ASEP violated the due process of law guarantees under the Ohio Constitution. As a result, the trial court granted an injunction prohibiting the enforcement of ASEP and ordered New

Miami to pay Plaintiffs $3,066,422.11 with interest. The trial court ordered that the payments be paid in ten annual installments. New Miami now appeals the trial court's decision, raising two assignments of error. Plaintiffs cross-appeal, also raising two cross-assignments of error for review.

{¶12} Assignment of Error No. 1:

{¶13} THE TRIAL COURT ERRED BY GRANTING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT ON COUNTS II, III, AND IV, AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO ALL COUNTS.

{¶14} Assignment of Error No. 2:

{¶15} THE TRIAL COURT ERRED IN AWARDING PLAINTIFFS EQUITABLE RESTITUTION IN THE AMOUNT OF $3,066,422.11

{¶16} In its first assignment of error, New Miami argues the trial court erred by granting summary judgment in favor of Plaintiffs by finding that ASEP violated Plaintiffs' rights to due process and denying New Miami summary judgment. We sustain New Miami's first assignment of error.

### *Walker v. Toledo*

{¶17} Though this case has been before this court three prior times, this is the first time that review of the merits of summary judgment has been properly before us. Furthermore, there has been additional guidance from the supreme court during the pendency of this case. In *Walker v. Toledo*, 143 Ohio St. 3d 420, 2014-Ohio-5461, the supreme court held that municipalities may, pursuant to their home-rule authority under Article XVIII of the Ohio Constitution, impose civil liability on traffic violators through the use of automated red-light cameras. *Id.* at ¶ 3. The court ruled that the ordinance in that case did not unlawfully usurp the jurisdiction of municipal courts over traffic violations. *Id.* at ¶

22-25. The court further held that municipalities' home-rule authority permitted them to establish civil administrative proceedings that must be exhausted before traffic violators may pursue judicial remedies. *Id.* at ¶ 26-28; *See also State ex rel. Scott v. Cleveland*, 112 Ohio St.3d 324, 2006-Ohio-6573, ¶ 24 (Cleveland's administrative disposition of civil traffic-law-violation liability was "an adequate remedy in the ordinary course of law by way of the administrative proceedings").

{¶18} Though *Walker* resolves Count 1, the supreme court stated that "administrative procedures must be established in furtherance" of the municipality's home-rule power. *Id.* at ¶ 28. In upholding the right of municipalities to establish administrative proceedings for civil enforcement of red light and speeding violations captured by automated camera systems, *Walker* provided little specific guidance concerning the nature of due process protections required in those proceedings. Thus, the issue before this court is whether ASEP provided sufficient due process guarantees to those who received a notice of liability. *See Toney v. City of Dayton*, 2d Dist. Montgomery No. 27245, 2017-Ohio-5618, ¶ 11.[1]

**Trial court's decision**

{¶19} The trial court's decision, which predated *Walker*, found that ASEP lacked adequate due process guarantees. In particular, the trial court found:

> Ordinance 1917, at first glance, appears to meet minimal requirements of due process. The ordinance provides a hearing in front of a hearing officer in which an owner can appear and challenge the notice of civil liability. The Village of New Miami

---

1. ASEP was enacted under the same statutory scheme as in *Walker*. Following the decision in *Walker*, the legislature passed H.B. 62, which amended R.C. 1901.20. As amended, R.C. 1901.20(A)(1) now states that municipal courts have "exclusive jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance." *State ex rel. Magsig v. City of Toledo*, Slip Opinion No. 2020-Ohio-3416, ¶ 11. "The current version of R.C. 1901.20(A)(1) clearly and unambiguously reserves for municipal courts exclusive authority to adjudicate every civil traffic-law violation. And that statutory grant of jurisdiction 'cannot be impaired or restricted by any municipal charter or ordinance provision.'" *Id.*, quoting *Cupps v. Toledo*, 170 Ohio St. 144, 151 (1959).

has entered into a contract with a private contractor to place four speed cameras along a busy north-south highway. That contractor and the Village split the civil fines imposed. The Supreme Court of Ohio has stated in *Mendenhall* * * * that these cameras are within the power of a municipality under Ohio's home-rule laws.

The Village has made a conscious decision to by-pass the traditional process of a police officer issuing a traffic citation for speeding and that ticket being contested in Hamilton Municipal Court. Invoking their home-rule authority, they have established a civil proceeding which ignores all basic concepts built into Ohio's rules of practice and procedure. This court has tremendous respect for those rules because the court understands that every rule adopted has withstood the scrutiny of the attorneys, law professors, judges and justices of Ohio. Built into every rule is the time honored tradition of fairness. The Village has intentionally chosen to ignore these basic tenets of procedural law and adopt a civil ordinance which is strongly skewed in its favor and which denies the people cited any chance for a fair hearing. The Village's elected council chose to by-pass the time tested process of the municipal court system by adopting this ordinance and did so at its own jeopardy. When government choses to by-pass time tested traditions which incorporate Ohio's rules of practice and procedure then it invites scrutiny to ensure the process is fair to the citizens from whom they wish to take their property. The Village could easily amend its ordinance so that these cases would be heard in the municipal court system. They have chosen not to.

When taken as a whole, the court believes Ordinance 1917 fails to provide basic due process rights to the citizens who appear for a hearing. No person with personal knowledge of a speeding violation either reviews the citation or appears at the hearing. Since no witness appears for the Village there is no confrontation with your accuser. The Village under the ordinance puts the burden on the owner to prove he was not the driver. The owner is forced to disclose who was driving the vehicle, including his or her spouse, to avoid liability. There is no right to discovery or right to subpoena witnesses. The hearing officer is appointed by the police chief and not required to have any legal training. There is no requirement for a record to be made. In fact, the only time a person has filed a R.C. 2506 appeal, the trial court granted the appeal because the Village failed to provide a record of the proceeding.

Construing the evidence most favorable to the defendants, the court believes the plaintiffs are entitled to summary judgment as

a matter of law. The Village of New Miami is permanently enjoined from operating the Automatic Speed Enforcement Program.

**Due course of law under Article I, Section 16 of the Ohio Constitution**

{¶20} This court reviews summary judgment decisions de novo. *Ludwigsen v. Lakeside Plaza, L.L.C.*, 12th Dist. Madison No. CA2014-03-008, 2014-Ohio-5493, ¶ 8. Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there are no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law and, (3) when all evidence is construed most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St. 3d 367, 369-70 (1998).

{¶21} Plaintiffs raise a facial challenge to ASEP, arguing that it violated the Ohio Constitution because it failed to provide sufficient due process guarantees. A facial challenge alleges that a statute, ordinance, or administrative rule, on its face and under all circumstances, has no rational relationship to a legitimate governmental purpose. *Jaylin Investments, Inc. v. Moreland Hills*, 107 Ohio St.3d 339, 2006-Ohio-4, ¶ 11. Facial challenges are the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid. *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, ¶ 21, citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095 (1987). If a statute is unconstitutional on its face, the statute may not be enforced under any circumstances. *Id.* When determining whether a law is facially invalid, a court must be careful not to exceed the statute's actual language and speculate about hypothetical or imaginary cases. *Id.*, citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450, 128 S.Ct. 1184 (2008). Reference to extrinsic facts is not required to resolve a facial challenge. *Reading v. Pub. Util. Comm.*, 109 Ohio

St.3d 193, 2006-Ohio-2181, ¶ 15.

{¶22} "All 'legislation, including municipal ordinances, are entitled to a strong presumption of constitutionality.'" *Toney*, 2017-Ohio-5618 at ¶ 10, quoting *Cleveland Taxpayers for Ohio Constitution v. City of Cleveland*, 8th Dist. Cuyahoga No. 94327, 2010-Ohio-4685, ¶ 7. Courts should liberally construe a statute in order to save it from constitutional infirmities. *Cleveland Taxpayers* at ¶ 7, citing *Lebanon v. McClure*, 44 Ohio App.3d 114, 116 (12th Dist. 1988). If, by "'any fair course of reasoning, the law and the constitution can be reconciled, the law must stand.'" *Id.*, quoting *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, ¶ 9.

{¶23} Article I, Section 16 of the Ohio Constitution guarantees that persons "shall have remedy by due process of law," which is the "equivalent of the Due Process Clause of the United States Constitution." *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, ¶ 69. "The fundamental requirements of due process are notice and the opportunity to be heard at a meaningful time and in a meaningful manner." *Lemasters v. Lemasters*, 12th Dist. Madison No. CA2018-06-018, 2019-Ohio-4395, ¶ 35, citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893 (1976).

{¶24} Due process is "'not a technical conception with a fixed content unrelated to time, place and circumstances.'" *Mathews* at 334, quoting *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743 (1961). Rather, due process is "'flexible and calls for such procedural protections as the particular situation demands.'" *Id.*, quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593 (1972). According to *Mathews*, a court must weigh the following three factors to determine whether the process given in the administrative proceeding is satisfactory: "(1) the private interest at stake, (2) the risk of an erroneous deprivation of that interest and the probable value of additional procedural

safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Langdon v. Ohio Dept. of Edn.*, 12th Dist. Butler No. CA2017-02-025, 2017-Ohio-8356, ¶ 21.

{¶25} In the present case, when one of New Miami's automated speed cameras captured a vehicle exceeding the speed limit, the registered owner of the vehicle was sent a notice of liability. The notice of liability included:

(1) The name and address of the registered owner of the motor vehicle,

(2) The license plate number of the motor vehicle involved in the violation,

(3) The violation charged

(4) The location of the violation.

(5) The date and time of the violation,

(6) A copy of the recorded image(s),

(7) The amount of the civil penalty imposed and the date by which the civil penalty should be paid and where the payment should be made,

(8) Information advising the person alleged to be liable of the options provided in subsection 77.02 of this ordinance,

(9) The time, place, and manner in which an administrative appeal can be initiated and a warning that failure to exercise the options provided under subsection 77.06 of this ordinance in a timely manner is an admission of liability.

Ordinance No. 1917, Section 77.04(a).

{¶26} If the owner of the vehicle wished to contest the notice of liability, he was entitled to request a hearing before a hearing officer within 20 days of the notice of violation. The hearing officer determined whether a preponderance of the evidence established that

a violation of this ordinance occurred and that the person requesting a review was liable. Prima facie evidence of the violation could be shown by a certified copy of the notice of liability:

> A certified copy of the notice of liability alleging the violation of this ordinance occurred, sworn to or affirmed by a duly authorized Village of New Miami Police Officer, with the recorded images or data produced by an automated speed enforcement system shall be prima facie evidence of the facts contained therein and shall be admissible in a proceeding alleging a violation under this ordinance.

Ordinance No. 1917, Section 77.07(a)(3)(A).

{¶27} ASEP also established four affirmative defenses for owners who wished to contest liability:

> (1) That the motor vehicle or license plates of the motor vehicle were stolen before the violation occurred and were not under control or possession of the owner at the time of the violation. In order to demonstrate that the motor vehicle or license plates were stolen before the violation occurred and were not under the control or possession of the owner at the time of the violation, the owner must submit proof that a police report about the stolen motor vehicle or license plates was filed prior to the violation or within 48 hours after the violation occurred.

> (2) That the motor vehicle was under the custody and/or control of another person at the time of the violation. In order to establish this, the owner or responsible person must provide the name and address of the person who had custody and/or control of the motor vehicle at the time of the violation.

> (3) That this section is unenforceable because at the time and place of the alleged incident, the automated speed enforcement was not in proper position and the recorded image is not legible enough to determine the information needed.

> (4) Evidence * * * that the owner or person named in the notice of liability was not operating the motor vehicle at the time of the violation. To satisfy the evidentiary burden under this subsection, the owner or person named in the notice of liability shall provide to the Hearing Officer evidence showing the identity of the person who was operating the motor vehicle at the time of the violation, including, but not limited to, the

operator's name and current address, and any other evidence
the Hearing Officer deems pertinent.

Ordinance No. 1917, Section 77.07(b).

{¶28} On appeal, Plaintiffs raise two main challenges to the constitutionality of ASEP.[2]  First, Plaintiffs claim ASEP allowed for decisions based exclusively on hearsay and, at the same time, did not provide for any discovery or subpoena power.  In other words, the civil administrative hearing lacked due process guarantees.  Second, Plaintiffs argue that ASEP improperly limited the use of affirmative defenses because it included a "rat out provision."  We will begin by addressing Plaintiffs argument with regard to the affirmative defenses.

**Affirmative Defenses**

{¶29}  Plaintiffs argue that ASEP was unconstitutional and violated their due process rights because, in order to avail oneself of the affirmative defenses that they were not driving the vehicle at the time of the violation, the owner of the vehicle was required to name the actual driver of the vehicle, i.e. the "rat out provision."[3]  Plaintiffs allege that the "rat out provision" limited the types of evidence that an owner could present at the civil administrative hearing.  Plaintiffs further maintain that the "rat out provision" offended spousal privilege under R.C. 2317.02(D) for those persons whose spouse was driving the vehicle at the time of the violation.

{¶30}  Following review, we find Plaintiffs arguments with regard to the affirmative

---

2. We note that Plaintiffs raise numerous challenges to ASEP.  However, when taken together, Plaintiffs raise two broad challenges: (1) the civil administrative hearing lacked due process guarantees, and (2) ASEP improperly limited the use of affirmative defenses.  All challenges can be considered as belonging to either or both of those categories.

3.  Likewise, if the vehicle or license plates are stolen, "the owner must submit proof that a police report, incident report/general offense report about the stolen motor vehicle or license plates was filed prior to the violation or within 48 hours after the violation occurred."

defenses to be without merit. Initially, we note that there is no constitutional infirmity with the manner in which New Miami chose to impose liability, i.e., upon the vehicle owner or lessee unless they identify the responsible party. This is indeed a common feature of automated speed programs. *See, e.g., Gardner v. City of Cleveland*, 656 F.Supp.2d 751, 761 (N.D. Ohio 2009), fn. 4 (finding that the ordinance provides a clear "rational arrangement" where a party may "decline to identify the driver, but requires him to accept the responsibility of ownership by taking the liability for his vehicle's speeding infractions"). In many instances, the owner of the vehicle will be the one driving and, in other instances, may well be aware of the person who had control of the vehicle at the time indicated in the notice of violation. The ordinance effectively provided the owner with a choice: accept liability for the third party's use of the vehicle or identify the responsible party. Such a system does not violate due process or upset traditional notions of fair play. *Toney*, 2017-Ohio-5618 at ¶ 21, citing *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009).

{¶31} Nevertheless, we can envision scenarios where the "rat out provision" could be unconstitutional as applied. However, irrespective of the constitutional infirmities we can imagine, Plaintiffs raise a facial challenge to ASEP. As such, Plaintiffs must show that ASEP *cannot* be applied constitutionally in any circumstance. *See Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, ¶ 21.

{¶32} It is clear that the "rat out provision" only applied when the owner receiving the notice of liability was not driving the vehicle. In other words, resolution of this issue depends upon the particular set of facts and circumstances involved in an individual case. ASEP cannot be facially invalid on that basis because it requires us to consider extrinsic facts that are not needed in resolving a facial challenge. *Reading*, 2006-Ohio-2181 at ¶ 15. This goes also for the contention that the provision offended spousal privilege as it is clear

the issue is only implicated in cases where notice of liability was issued to a married person whose spouse is driving the vehicle. *Toney*, 2017-Ohio-5618 at ¶ 22. It would not apply to an unmarried individual or where a business entity is issued the notice of liability. Thus, the "rat out provision" is not an appropriate consideration in this facial challenge to ASEP as there will be cases in which the registered owner and driver of the vehicle are the same person.

### Civil Administrative Hearings

{¶33} Notwithstanding the affirmative defenses, Plaintiffs claim that the most significant problem with ASEP was that it allowed for decisions based exclusively on hearsay and did not provide for any discovery or subpoena power. For that matter, Plaintiffs note that Optotraffic, the company that operated the speed enforcement camera, retained 40 percent of the fines for speeding, while New Miami retained the other 60 percent. Thus, Plaintiffs claim that the lack of procedural safeguards, coupled with Optotraffic's position as an interested party, amounted to a violation of due process.

{¶34} We begin by noting that the supreme court has held that administrative agencies are not bound by the rules of evidence applied in court. *City of Cleveland v. Posner*, 193 Ohio App.3d 211, 2011-Ohio-1370, ¶ 27 (8th Dist.), citing *Simon v. Lake Geauga Printing Co.*, 69 Ohio St.2d 41, 44 (1982). Evidence that is admissible in administrative hearings is defined as follows: "(1) 'Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) 'Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) 'Substantial' evidence is evidence with some weight; it must have importance and value." *Id.*, quoting *Our Place, Inc. v. Ohio Liquor Control Com.*, 63 Ohio St.3d 570, 571 (1992). Furthermore, hearsay is

admissible in administrative proceedings. *Simon* at 44.

{¶35} In *Toney*, the Second District considered facial constitutional challenges to automated speed enforcement ordinances in the cities of Dayton, Trotwood, and West Carrollton. *Toney*, 2017-Ohio-5618 at ¶ 2. Those ordinances were challenged on the basis that the civil administrative hearing process permitted hearsay, did not provide for prehearing discovery or a means to compel the attendance of witnesses via subpoena power, permitted limited affirmative defenses, and abrogated the spousal privilege. *Id.* at ¶ 13.

{¶36} In upholding the ordinances, the Second District found that the use of hearsay, as well as the lack of discovery and subpoena power, did not violate due process because the ordinance afforded the recipient of a notice of liability with "a reasonable opportunity to present a defense based on the most likely grounds, even if a recipient would, as a practical matter, have little choice other than to bring an administrative appeal under R.C. Chapter 2506." *Id.* at 18.

{¶37} Plaintiffs insist that *Toney* is not binding on this court and argue that it was wrongly decided. Though we acknowledge that *Toney* is not necessarily binding on this court, we nevertheless find it persuasive as to Plaintiffs facial due process challenge. With that in mind, we now weigh the factors in determining whether the process given in this administrative proceeding is satisfactory. *Langdon*, 2017-Ohio-8356 at ¶ 21.

{¶38} The first *Mathews* factor is "the private interest that will be affected by the official action." *Mathews*, 425 U.S. at 335. Under ASEP, the civil penalty assessed was $95.00. However, if the penalty was not paid within 20 days, the penalty increased to $125.00 and again to $180.00 if not paid within 45 days. Furthermore, the failure to respond to a notice of liability could result in an additional penalty of $25.00. Thus, the maximum

civil penalty was $205.00. Although this is a significant expense, we find that it, on scale, is a relatively lesser private interest. *Toney* at ¶ 15 (maximum penalty of $275.00 was a "significant expense," but "is comparatively insubstantial with respect to the overall cost of owning and operating a vehicle).[4]

{¶39} The second *Mathews* factor is "the risk of erroneous deprivation of [the private interest] through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews* at 335. ASEP provided that an owner must receive a notice of liability, had a right to a civil administrative hearing, and at the hearing, was permitted to introduce evidence in support of a defense. *See Walker*, 2014-Ohio-5461 at ¶ 29 (under prior law municipalities had home-rule to establish administrative proceedings). Pursuant to ASEP a "certified copy of the notice of liability alleging the violation of this ordinance occurred, sworn or affirmed by a duly authorized Village of New Miami Police Officer, with the recorded images or data produced by an automated speed enforcement system shall be prima facie evidence of the facts contained therein and shall be admissible in a proceeding alleging a violation under this ordinance."

{¶40} Though these procedures fell short of the due process accorded a defendant in a civil trial, the supreme court has made clear that civil administrative proceedings were permissible as "a complementary system of civil enforcement of traffic laws." *Walker* at ¶ 28. While *Walker* did not specifically address the types of protections to ensure procedural due process, the court referenced prior decisions in *Mendenhall* and *Scott* as examples of administrative enforcement proceedings that have been "sanctioned by this court in other

---

4. Moreover, the private interest is significantly less than the interest in *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 400 (6th Cir.2017) and *Doe v. Baum*, 903 F.3d 575, 582 (6th Cir.2018), which Plaintiffs cite in their brief. In both those cases, the private interests at stake were a finding of responsibility for a sexual offense. *Univ. of Cincinnati* at ¶ 582 ("Time and again, this circuit has reiterated that students have a substantial interest at stake when it comes to school disciplinary hearings for sexual misconduct").

cases." *Id.*, citing *Mendenhall v. City of Akron*, 117 Ohio St.3d 33, 2008-Ohio-270 at ¶ 6-8. *See also State ex rel. Scott v. Cleveland*, 112 Ohio St.3d 324, 2006-Ohio-6573, ¶ 24 (Cleveland's administrative disposition of civil traffic-law-violation liability was "an adequate remedy in the ordinary course of law by way of the administrative proceedings").

{¶41} We acknowledge that an owner who received a notice of liability mounting a defense based on a malfunctioning or uncalibrated automatic enforcement equipment would have encountered significant obstacles without the ability to submit discovery requests or subpoena the individuals responsible for monitoring and maintaining the equipment.[5] However, since administrative hearings are not governed by the rules in effect for criminal proceedings, we agree with *Toney* that these obstacles "do not of themselves rise to the level of constitutional infirmities because a defendant has no constitutional right to confront witnesses in civil proceedings." *Id.* at ¶ 18. Moreover, though ASEP did permit the use of hearsay, we believe that New Miami could produce reliable, probative, and substantial evidence that is admissible in a civil administrative proceeding, which the owner could contest before a hearing officer.

{¶42} Though we may have preferred a system grounded in the rules we apply in the courtroom, the supreme court has held that these rules are not required in administrative proceedings. *State ex rel. Scott*, 2006-Ohio-6573 at ¶ 21. For that matter, ASEP does not

---

5. The record reflects that the automatic enforcement system detects speed of a vehicle by a time-distance speed measurement. That is, it incorporates two parallel laser beams that records when the first beam is broken and when the second beam is broken, which can then be used to determine the speed of the vehicle. New Miami produced the affidavit of John O'Connor, who operates these devices and contracts with Optotraffic, the third-party administrator of the equipment. O'Connor testified that the distance between the beams is calibrated annually by an independent third-party calibration laboratory and is accurate to 1/millionth of a second. In addition, O'Connor averred that the system performs "a self-test that runs daily, or upon starting or restarting the system, and verifies the full functioning of the lane sensors, cambers, data processing unit, and facility resource status." In the event that the daily calibration check fails, O'Connor stated that "the system immediately suspends enforcement operations and makes another attempt to run the self-check. If the second attempted self-check fails, the system notifies Optotraffic's central dispatch that the system is no longer actively enforcing and needs to be serviced before being returned to active status."

on its face prohibit an owner from rebutting New Miami's prima facie case by offering evidence to the contrary. For instance, an owner may present testimony of an expert who may testify generally as to the reliability of these laser speed measuring devices. A prima facie case only creates a rebuttable presumption. Evidence which meets or exceeds the presumption defeats the prima facie case. While ASEP does provide for "affirmative defenses," there is no such prohibition on evidence that a defendant could have used to assert a defense to New Miami's prima facie case. Rather, ASEP provides that these issues are submitted to a hearing officer who then adjudicates liability "based on a preponderance of the evidence."

{¶43} We note Plaintiffs' concern that Optotraffic retained a large percentage of the fines levied, yet were permitted, through their own speed enforcement equipment, to provide prima facie evidence of a violation.[6] Rather than speculate about any scheme or potential flaw in the speed monitoring system, we believe that Plaintiffs' concern is more appropriately categorized as an argument weighing on credibility, which would have been a proper avenue for a defense in the civil administrative hearing. *Posner*, 2011-Ohio-1370 at ¶ 28 (notice of liability, photographs, and logbook showing speed enforcement device's calibration was probative and substantial as to whether a defendant was speeding). To that end, we agree that administrative hearings held pursuant to ASEP qualified as quasi-judicial proceedings where an owner could overcome the obstacles listed above through an administrative appeal under R.C. Chapter 2506. *Toney* at ¶ 18, citing *City of Cleveland v. Cord*, 8th Dist. Cuyahoga No. 96312, 2011-Ohio-4264, 13, 19 (appellant's due process rights were not frustrated because R.C. 2506.03 left an avenue open for him to call

---

6. *Walker* also involved revenue sharing between the private company and the City of Toledo. *Walker*, 2014-Ohio-5461 at ¶ 5.

witnesses and present additional evidence that he was prevented from utilizing during the administrative hearing).

{¶44} The final *Mathew* factor is the government's interest, "including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail." ASEP was an exercise of New Miami's police power intended to promote traffic safety. To include additional procedural safeguards, such as granting subpoena power and granting defendants the right to engage in discovery would have resulted in increased costs and administrative burdens. As the Second District did in *Toney*, we find that the increased fiscal and administrative burdens would outweigh the potential benefit of enhanced procedural due process protections. *Toney*, 2017-Ohio-5618 at ¶ 19.

{¶45} As a result, Plaintiffs' arguments concerning the use of hearsay and lack of discovery and subpoena power are unavailing. ASEP afforded the recipient of a notice of liability with a reasonable opportunity to present a defense based on the most likely grounds. The remaining arguments Plaintiffs raise with respect to purported constitutional infirmities are unavailing in that they are not appropriate bases for a facial challenge to a statute, ordinance, or administrative rule. As we have explained, facial challenges are the most difficult to mount and are only successful when the provision may not be enforced under any circumstances. This court is not to speculate about hypothetical cases and references to extrinsic facts are not required. *Reading*, 2006-Ohio-2181 at ¶ 15.

**Conclusion**

{¶46} Evaluated pursuant to the *Mathews* factors, ASEP provided a situationally appropriate level of due process protection. Consequently, Plaintiffs have not shown that the administrative procedures established in the ordinance were constitutionally insufficient. Therefore, ASEP, as it existed under statutory scheme in *Walker* was not constitutionally

invalid on its face. New Miami's first assignment of error is sustained. The summary judgment in favor of Plaintiffs is hereby vacated and, finding that New Miami is entitled to judgment as a matter of law, we hereby enter summary judgment on behalf of New Miami on Counts 2, 3, and 4 in accordance with App.R. 12(B).

{¶47} Our resolution of the New Miami's first assignment of error renders its second assignment of error moot. As a result, Plaintiffs two cross-assignments of error are also rendered moot.

{¶48} Judgment reversed and judgment entered on behalf of New Miami.

M. POWELL, P.J., concurs.

PIPER, J., concurs separately.

**PIPER, J., concurring separately.**

{¶49} While I completely concur in the foregoing opinion, I write separately only to emphasize there are significant due process concerns involving the Automated Speed Enforcement Program as implemented by New Miami's ordinance. As pointed out in the opinion the constitutional claim herein was of a facial challenge and not an as applied challenge. The legal difference in the analysis to be performed requires my concurrence.

{¶50} In making a facial challenge analysis, I find myself constrained by the precedent cited in our majority opinion. *Walker* is the law of the case even though it has more recently been compromised by *State ex rel., Magsig v. Toledo,* Slip Opinion No. 2020-Ohio-3416 (where the Supreme Court recently noted that HB 62 amended R.C. 1901.20(A)(1) which abrogated the holding in *Walker.*) Thankfully, the legislature has responded to correct such ordinances as the one New Miami's council enacted. The trial

court's concern for due process is quite understandable. [7]

{¶51}  It is disingenuous to say that government interest is predominant when it is a private enterprise that creates the system, manages the system, and then commercially reaps huge profits from a minimalistic civil process.  This profit is not from selling equipment that is then placed in control of the government.  This profit is not for training government officials so that a government operated program can take place.  The private sector profit is directly related to the number of citizens the Maryland company can technologically catch and then funnel into the ordinance's bare bones civil administrative process.  Regrettably, controlling case law has accepted such quasi-judicial administrative procedures as compliant with due process.

{¶52}  The owner of a vehicle is financially coerced into paying the "liability."  No reasonable person decides to miss work making several appearances only to then pay an appeal bond in order to have access to the legal evaluation and impartiality only the courts provide.  The citizen is funneled into a process that financially coerces one into simply paying the fine.  The potential cost in establishing one's innocence becomes such a burden emotionally, timewise, and financially, a reasonable person has no choice but to pay up.

{¶53} I am equally concerned about advancing government expediency and financial savings at the cost of minimizing due process for its citizens.  The use of technology to create a prima facia case against a vehicle's owner appears to be a convenient opportunity to generate revenue under the guise of public safety.  This appearance is particularly poignant where the record reveals extremely thin documentation

---

7. In reviewing photographic evidence attached to depositions the camera angle never identifies the *operator*, so instead, the *owner* of the vehicle receives a notice of liability.  To most people this "liability" is a fine.  It doesn't take a census for the average person to know there are many more potential operators or licensed drivers per household than there are vehicles (i.e. registered owners).

of a genuine safety related concern.[8]  I wholeheartedly support the use of technology to assist law enforcement in the performance of their responsibilities, however, the legal trend permitting private contractors to profit from the use of public roadways and traffic law enforcement is disturbing.

{¶54}  However, with the record at hand and the law we are required to apply, I cannot find New Miami's ordinance is constitutionally insufficient.  Thus, I concur, with some disfavor, in our majority opinion.

---

8.  The 40% the Maryland company received in 15-months' time was approximately $1.2 million.  An amount that large could easily employ two or more New Miami officers dedicated solely to traffic enforcement.  There is nothing better than the presence of law enforcement to deter violations were that the true goal.