[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Barrow v. New Miami*, Slip Opinion No. 2022-Ohio-423.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

BARROW ET AL., APPELLANTS, *v.* VILLAGE OF NEW MIAMI, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Barrow v. New Miami*, Slip Opinion No. 2022-Ohio-423.]

*Appeal dismissed as having been improvidently accepted.*

(No. 2021-0151—Submitted January 26, 2022—Decided February 16, 2022.)

APPEAL from the Court of Appeals for Butler County, Nos. CA2019-07-112 and CA2019-08-136, 2020-Ohio-4873.

_____

{¶ 1} This cause is dismissed as having been improvidently accepted.

O'CONNOR, C.J., and KENNEDY, FISCHER, and STEWART, JJ., concur.

DEWINE, J., dissents, with an opinion joined by DONNELLY and BRUNNER, JJ.

_____

**DEWINE, J., dissenting.**

{¶ 2} I dissent from the majority's decision to dismiss this case as having been improvidently allowed. This case presents an important question that we

should address about the minimum process that is due before the government may adjudicate citizens civilly liable and impose fines upon them.

{¶ 3} The Village of New Miami set up speed-enforcement cameras on a portion of United States Route 127 that runs through the village. The cameras served as a classic speed trap, and in only 20 months the program netted over $3 million.

{¶ 4} The camera-enforcement operation was run by a Maryland company, Optotraffic, L.L.C., that had a financial incentive to maximize ticket revenues. Optotraffic owned and maintained the traffic cameras, generated and mailed the "notices of liability," and collected fines from violators. In return for these services, Optotraffic kept 40 percent of the fines.

{¶ 5} When a vehicle was clocked speeding, the vehicle's owner was sent a notice of liability. Upon receiving the notice, the vehicle's owner had two options: (1) pay the fine or (2) request an administrative hearing before a hearing officer appointed by New Miami. An owner who requested a hearing started with the odds against him and was given few tools to change those odds. Pursuant to a New Miami ordinance, the village established a prima facie case of a violation simply by submitting the notice of liability. *See* former New Miami Ordinances 1917, Section 77.03(d).

{¶ 6} The vehicle owner had no meaningful opportunity to rebut the prima facie case. There was no way for a vehicle owner to challenge whether Optotraffic's cameras were working properly. There was no right to compel witness testimony, so the owner could not subpoena the person who calibrated the speed-enforcement camera or created the notice of liability. There was no right to discovery, so the owner couldn't file a discovery request for calibration records or even the most basic information about the camera system or its operator. (According to New Miami, a vehicle owner could try to get such records by filing

2

a public-records request.) Pretty much all that an owner could do was contend that someone else was driving the car and provide the name and address of that person.

{¶ 7} New Miami says that the lack of procedural safeguards in the administrative- hearing process is immaterial because a vehicle owner who was unsuccessful in the administrative proceeding could file an appeal under R.C. Chapter 2506, thereby obtaining the rights to compel witnesses' attendance in the common pleas court and to cross-examine them. But one has to wonder about that proposition: if an administrative proceeding assessed liability through a game of rock-paper-scissors, would all be well as long as there was a right to appeal? What of the fact that no rational person would actually appeal? (To appeal a $95 fine levied under the program to the common pleas court, one would have to pay a $285 filing fee.)

{¶ 8} Recognizing the potential for abuse that arises from administrative procedures like those that New Miami employed, the Generally Assembly stepped in and vested Ohio's municipal courts with exclusive jurisdiction over cases involving misdemeanor violations of state and municipal traffic laws. *See* R.C. 1901.20(A)(1). But nothing prevents Ohio's municipalities from employing administrative schemes like New Miami's in other areas of the law.

{¶ 9} Rather than dismissing this case as having been improvidently allowed, we should issue a decision in it. A decision by this court would provide the benefit of a resolution to the live controversy in front of us as to whether the plaintiffs are entitled to a refund of their traffic fines. But more importantly, by reaching a decision on the merits, we could answer the important question whether a government may deprive citizens of property through an administrative scheme that provides as little procedural protection as this one.

{¶ 10} Because this case presents an important issue that deserves our attention, I respectfully dissent from the majority's decision to dismiss the case as having been improvidently allowed.

3

DONNELLY and BRUNNER, JJ., concur in the foregoing opinion.

—————————

Markovits, Stock & DeMarco, L.L.C., and Paul M. DeMarco; Engel & Martin, L.L.C., and Joshua A. Engel; Rittgers & Rittgers and Charles H. Rittgers; Michael K. Allen & Associates, L.L.C., and Michael K. Allen; and Ehlert Hicks, L.L.P., and Allison Ehlert, for appellants, Doreen Barrow et al.

Rendigs, Fry, Kiely & Dennis, L.L.P., James J. Englert, Felix J. Gora, and Anthony G. Raluy, for appellee.

Barbara J. Doseck, Dayton Director of Law, and John C. Musto, Chief Trial Counsel; and Dale R. Emch, Toledo Director of Law, Jeffrey B. Charles, Chief of Litigation, and John T. Madigan, Senior Attorney, urging dismissal or affirmance for amici curiae cities of Dayton and Toledo.

—————————